## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| **XIINGO.COM, INC; FULL CIRCLE HOLDINGS, LLC; and ALISON SOUTH MARKETING GROUP, LLC,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action** |
| **MICHAEL THOMAS; ASHLEY THOMAS; WESLEY ROBERTS; KATHLEEN SANDERS; AND NEXT MARKETING GROUP,** | **No.:**  CV 123-184 |
| **Defendants.** | |

### VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND MONETARY RELIEF

NOW COME Plaintiffs Xiingo.com, Inc. ("Xiingo"), Full Circle Holdings, LLC, ("Full Circle") and Alison South Marking Group, LLC ("Alison South"), by and through their attorneys, and file this Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction and Monetary Relief against Defendants Michael Thomas ("Mike Thomas" or "Mr. Thomas"), Ashley Thomas ("Mrs. Thomas"), Wesley Roberts ("Roberts"), Kathleen Sanders ("Sanders"), and Next Marketing Group, Inc. ("Next Marketing Group"), stating as follows:

### Nature of the Case

1.      In January of 2023, Defendant Mike Thomas and his partner, Defendant Sanders, sold the ownership interests of their business, Full Circle, including its subsidiary, Alison South, to Xiingo for a substantial sum of money. To protect Xiingo's investment, Mike Thomas and Sanders entered into restrictive covenant agreements as part of an equity purchase agreement and separate employment agreements executed in conjunction with the purchase. After cashing in on the sale of his business, Mike Thomas then set out on a calculated plan to destroy the very business he had sold to Xiingo and move as much value in that business as he could (in the form of customer

contracts) to a new business, Defendant Next Marketing Group, Inc., ostensibly owned by Mr. Thomas's wife, Defendant Ashley Thomas, and Defendant Wesley Roberts, a former contractor for Alison South.  Defendants Mike and Ashley Thomas, with assistance from Mr. Roberts, are misappropriating trade secrets, confidential business information, employees, and clients from Plaintiffs to enable Defendants' new company to unfairly compete with Plaintiffs in violation of Mike Thomas's restrictive covenants.  Without this Court's intervention, Defendants will be allowed to perpetrate a massive fraud on Xiingo and will irreparably damage the business for which Xiingo paid valuable consideration.

## Parties

2.      Plaintiff Xiingo is a corporation organized under Delaware law, with its principal place of business located in Texas.  For the purpose of diversity jurisdiction under 28 U.S.C. § 1332, Xiingo is a citizen of Texas and Delaware.

3.      Plaintiff Full Circle is a limited liability company organized under South Carolina law.   Plaintiff Xiingo is the sole member/owner of Full Circle.  Accordingly, for the purpose of diversity jurisdiction, Full Circle is a citizen of Texas and Delaware, like its parent company, Xiingo.[1]

4.      Plaintiff Alison South is a limited liability company organized under South Carolina law.  Plaintiff Full Circle is the sole member/owner of Alison South.  Accordingly, for the purpose of diversity jurisdiction, Alison South is a citizen of Texas and Delaware, like its parent company, Full Circle.

5.      Defendant Next Marketing Group, Inc. is a South Carolina statutory close corporation with its principal place of business in Aiken, South Carolina.  It may be served through its registered agent, Charles A. George at 4000 Faber Place Drive, Suite 300, North Charleston,

---

[1] "[A] limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

South Carolina 29405.  For the purpose of diversity jurisdiction, Next Marketing Group is a citizen of South Carolina.

6.      Defendant Mike Thomas is a South Carolina citizen and resident with his principal residence located at 27 Troon Way, Aiken, South Carolina.

7.      Defendant Ashley Thomas is a South Carolina citizen and resident with her principal residence located at 27 Troon Way, Aiken, South Carolina.

8.      Defendant Wesley Roberts is a Georgia citizen and resident with his principal residence located at 250 Milledge Road, Augusta, Georgia.

9.      Defendant Kathleen Sanders is a Georgia citizen and resident with her principal residence located at 268 Foxfire Court, Martinez, Georgia.

## Jurisdiction

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this Court has original jurisdiction over Plaintiffs' claims under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367(a) because Plaintiffs' state law claims are so related to Plaintiffs' DTSA claims that they form part of the same case or controversy.  The Court also has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiffs are citizens of the states of Texas and Delaware, while Defendants are citizens of the states of South Carolina and Georgia.

11.      This Court has personal jurisdiction over Defendants Sanders and Roberts (collectively, "the Georgia Defendants") because they reside in this District.  The Court has personal jurisdiction over Defendants Next Marketing Group, Mike Thomas, and Ashley Thomas (collectively, "the South Carolina Defendants") because the South Carolina Defendants: (i) committed acts giving rise to Plaintiffs' claims in this District, (ii) transact business in the State of Georgia and have purposely directed their contacts to both the State of Georgia and this District,

3

(iii) have committed tortious acts in the State of Georgia; and (iv) have caused harm to Plaintiffs in Georgia.  See O.C.G.A. § 9-10-91.

## Factual Background

### A.  Xiingo Plans to Acquire Full Circle and Alison South.

12.     Full Circle is a holding company based in South Carolina that owns interests in multiple subsidiary companies involved in marketing, digital media, and branding.

13.     Alison South is a wholly owned subsidiary of Full Circle

14.     Alison South is a full-service marketing company operating out of Aiken, South Carolina and neighboring Augusta, Georgia, with over forty employees and with affiliate locations in Fort Lauderdale, Florida, and Chattanooga, Tennessee. It provides digital advertising, branding, marketing analysis and strategy, web and app development, promotional, and event marketing services to clients.

15.     Since its founding in 2010, Alison South has become a well-known, premier marketing group with high-profile clients in the Central Savannah River Area ("CSRA") and across the Southeast.[2]

16.     Defendant Mike Thomas and nonparty Kathleen Sanders were co-owners of Full Circle and Alison South before they sold both companies to Xiingo on January 1, 2023.

17.     Xiingo.com is a digital marketing agency with offices in Houston, Texas, specializing in B2C and B2B customer acquisitions.[3]  Xiingo provides turnkey digital marketing solutions including search engine marketing, paid advertising and telemarketing.

18.     In 2022, Xiingo began looking for opportunities to expand its range of offerings to provide full-service marketing to its clients. Xiingo learned about an opportunity to purchase Full

---

[2] https://alisonsouthmarketing.com/
[3] https://www.xiingo.com/

Circle through a business broker, "Barney" (wearebarney.com), that provides mergers and acquisitions advisory for buyers and sellers of digital marketing companies.

19.    Xiingo proposed to acquire Full Circle and Alison South, with Full Circle and Alison South clients continuing their relationships with local account managers and benefiting from the additional expertise brought by Xiingo.[4]

20.    To foster the success of the new business relationship with Xiingo, Mike Thomas agreed to become the Chief Executive Officer ("CEO") of Full Circle, operating primarily out of Alison South's offices in Aiken, South Carolina, and Augusta, Georgia, and work to develop Plaintiffs' business strategies, client retention, employee recruitment, and client relationships throughout Georgia, South Carolina, and the Southeast for at least three years following the acquisition.

21.    Plaintiffs' plan for their future success was dependent on the commitment, loyalty, and trustworthiness of Mike Thomas and other key Full Circle/Alison South personnel.

**B.  Plaintiffs' Trade Secrets and Confidential Business Information.**

22.    Generally, as a marketing business, Plaintiffs' success depends on loyal management, strong relationships with clients and employees, reputation in the community, and competitive marketing strategies.

23.    Plaintiffs expend significant resources developing client relationships and creating an environment where employees can thrive, establish good rapport, and generate business with clientele.  Plaintiffs are also active in their local communities, advertising and participating in public events to build their reputation.

---

[4]*See* http://augustaceo.com/features/2023/01/alison-south-marketing-expands-services-and-resources/?utm_source=augustaceo&utm_medium=rss&utm_campaign=rss; https://augustabusinessdaily.com/new-partnership-expands-services-and-resources-for-alison-south-marketing/

24.     To remain competitive, Plaintiffs maintain trade secrets and confidential business information regarding sales and marketing strategies, profit and loss data, business practices and procedures, instructions, product plans, pricing information, performance of sales employees, personnel information, business strategies, financial information, forecasts, territory listings, profitability analysis, product costs, long-range plans, new product developments, contracts, supplier lists, information regarding improvements, designs, ideas, lists of current and prospective clients, customer presentations, and the profile of those current and prospective clients.

25.     Additionally, Plaintiffs maintain digital assets including marks, digital designs, web page designs, logos, audio/visual content, marketing copy, and other data for use in their clients' marketing campaigns.

26.     Plaintiffs take steps to ensure the protection of their trade secrets and confidential business information.  Plaintiffs' trade secrets and confidential information are stored and protected using document management software available on Plaintiffs' computers and electronic devices.  Only current employees of Plaintiffs have access to this protected information.  Plaintiffs make sure their employees understand the importance of maintaining the confidentiality of Plaintiffs' protected information and client database, which is discussed in an employee handbook and employee non-disclosure and confidentiality agreement.   All employees are obligated to return company devices, documents, equipment, and protected information upon resignation or termination.  Employees are not permitted to take or destroy company assets, data, property, and services.

27.     In short, Plaintiffs expend considerable resources, time, and effort to maintain and protect their trade secrets and confidential business information in order to stay competitive in the industry.

**C. Xiingo's Acquisition of Full Circle, Alison South, and Terms of Agreement.**

28.    On January 1, 2023, Defendants Mike Thomas and Kathleen Sanders, then the co-owners of Plaintiff Full Circle, entered into an Equity (Membership Interest) Purchase Agreement ("PA") to sell their ownership interests in Plaintiff Full Circle to Xiingo.com, Inc.  (*See generally* Exhibit A.)

29.    Among other things, Mr. Thomas and Sanders made a number of representations and warranties in furtherance of the sale, including that they had fully disclosed the "material financial position of [Full Circle] and the material results of operations," any and all "liabilities incurred" by Full Circle, and all customers that intended to alter their business relationship with Full Circle, as of the execution of the PA on January 1, 2023.  (*See* Ex. A at 7-10, §§ 3.5, 3.6, 3.7, and 3.9)

30.    Under the PA, Mike Thomas agreed: (a) to maintain the confidentiality of Plaintiffs "Business Information" (*i.e.*, Full Circle and Alison South's proprietary information, confidential business information, and trade secrets), and (b) not to use, transfer, or disclose Plaintiffs' "Business Information."  (*See* Ex. A at 17, § 5.4.)

31.    In the PA, Mike Thomas also agreed not to compete against Plaintiffs, not to solicit Plaintiffs' employees, and not to disparage Plaintiffs.  (*See id.* at 18, § 6.2.)  Thomas agreed to serve as the CEO for Full Circle for a period of three (3) years.  (*Id.* at 18-19, § 6.3.)

32.    Also on January 1, 2023, Mike Thomas entered into an Employment Agreement ("EA") with Full Circle to serve as its CEO.  (*See generally* Exhibit B.)

33.    Under the EA, Mike Thomas also agreed to serve as the CEO for Full Circle for a period of three (3) years and not to "accept or enter into contemporaneous consulting/employment relationships with third parties."  (Ex. B at 1, § 1, 2.)

34.    Under the EA, Mike Thomas agreed to keep Plaintiffs' trade secrets information confidential.  (*Id.* at 3-4, § 6.)

35.     He also agreed not to compete against Plaintiffs or to solicit Plaintiffs' employees for a period of thirty-six (36) months following termination from employment with Full Circle. (Ex. B at 4, § 6.)

36.     Under the terms of the PA, Xiingo agreed to pay a portion of the purchase price out of the quarterly net profits of Plaintiffs following acquisition, which was secured by a promissory note and pledge agreement.  (Ex. A at 5, § 2.4.)

37.     If Plaintiffs did not meet the net profit thresholds, and therefore could not make the payments under the note, Mike Thomas and Sanders had the ability, among other remedies, to reclaim ownership interest in the company when the payment obligation matured.  (*Id.*)

**D. Xiingo Discovers Undisclosed Accounting Irregularities in Full Circle's and Alison South's Books and Customer Terminations Begin.**

38.     Almost immediately after Xiingo's acquisition of Full Circle closed, the new ownership began to experience problems.

39.     First, Full Circle's new CFO, Priya Betala ("Ms. Betala"), discovered that there were unrecorded liabilities, including all employee Paid Time Off ("PTO") and numerous intercompany liabilities.

40.     These liabilities had not been reflected in financial statements delivered to Xiingo as part of due diligence for the purchase acquisition, despite Mike Thomas and Sanders representing and warranting that the financial statements accurately reflected the company's financial position.

41.     Undisclosed liabilities would have the effect of inflating the value of the equity purchased by Xiingo because equity is calculated by subtracting the value of a company's assets from the value of its liabilities.

42.     In light of these concerns and based on other issues, Ms. Betala became concerned that GAAP accounting principles had not been consistently applied in preparation and maintaining of the Full Circle financial statements.

43.     Additionally, following the closing of the transaction, Mr. Thomas and Sanders failed to provide the new ownership with full access to the company's historic books, as well one of Alison South's bank accounts.

44.     Cash was still being received in late 2022 and 2023 for work invoiced in 2022, which was to be reported by Mike Thomas and Sanders for tax purposes. This became problematic, because the parties to the transaction still had to file the 2022 year end tax return.

45.     After many months, Mike Thomas and Sanders provided the new owners a 2022 tax return but applied none of the underlying support. Therefore, Ms. Betala was unable to confirm whether cash received by Mr. Thomas and Mrs. Sanders had been properly reported as 2022 taxable income. Even more troubling, Ms. Betala was unable to confirm whether her own accounts receivable numbers for amounts due prior to the closing were correct, because she did not have access to reports on whether cash had been received for those receivables.

46.     Ms. Betala attempted to gain access to the company's prior year books to review how the accounting had been handled; however, despite repeated requests for access to these books Ms. Betala has, to date, been unable to obtain access.

47.     Ms. Betala also requested the books or back-up tied to the tax returns filed for all the entities under the Full Circle holding company, but Mike Thomas and Mrs. Sanders failed to provide them, as well.

48.     Mike Thomas and Mrs. Sanders further failed to provide access to the company's 401(k) accounts after the acquisition.  As a result, Ms. Betala had to hold contributions in the company's bank account and could not ensure that contributions were deposited to the 401(k) accounts in a timely manner.

9

49.     In addition to all the accounting problems, within a few weeks of closing the transaction, Alison South received notices from the law firm of the closing attorney who represented the sellers in the transaction and had been long term clients of Alison South that they were terminating their account with Alison South.

50.     Further, Alison South received notice from a major banking client that it was substantially reducing its level of services.

51.     In the months that followed, Alison South received termination notices from dozens more clients.

52.     Upon information and belief, Mr. Thomas and/or Sanders knew that many of these terminations were threatened or imminent and did not disclose them as part of the transaction.

53.     Mr. Thomas and Sanders' failure to provide accurate financial records and to disclose material changes in the business, including loss or anticipated loss of clients, were material breaches of their warranties and representations in the PA. (*See* Ex. A at 7-10, §§ 3.5, 3.6, 3.7, and 3.9) Further, their refusal to provide Full Circle with full access to company records, which the company continues to own post-closing, are material breaches of the PA.

**E. Mike Thomas Performs Poorly for Plaintiffs and Mike and Ashley Thomas Degrade their Working Relationship with Plaintiffs in the Months Following Xiingo's Acquisition of Full Circle and Alison South.**

54.     In addition to the foregoing problems, Mike Thomas also failed to perform as expected in his role as CEO of Full Circle.

55.     The new owners of Full Circle encountered problems with Mike Thomas almost immediately after they took over the company.

56.     Mike Thomas was combative, unwilling to operate within processes that the new ownership attempted to establish, and frequently undermined the new ownership to their employees and clients in both Georgia and South Carolina.  It also became clear that many of the employees did not like working for Mr. Thomas and found him to be confrontational.

10

57.     During this time, Mike Thomas's wife, Defendant Ashley Thomas, was working for Alison South as a contractor. Among Mrs. Thomas's contracting duties was handling a portfolio of state and local fair clients.

58.     Not long after the acquisition closed, Mr. Thomas began pushing the new Full Circle ownership to allow he and Mrs. Thomas to take the fair work and handle it separately as consultants to the fairs.

59.     This arrangement was never discussed as part of the original transaction and the new Full Circle ownership declined this arrangement, as it would have diverted even more revenue from an already shrinking company.

60.     Despite Mr. Thomas's inability to get along with management and many other employees, Mr. and Mrs. Thomas then began pushing for Alison South to hire Mrs. Thomas as a full-time employee. Mrs. Thomas was similarly confrontational with the new Full Circle Management.

61.     Among the clients in the fair portfolio was a company called Reithoffer Shows. Reithoffer Shows is a "rider" company, which bids on management of fairs for local or state entities and then subcontracts with other companies, like Alison South, to perform certain portions of those contracts.

62.     Without authorization from any of the owners at Full Circle and because she was angry that she had not received a full-time contract, Mrs. Thomas purposely declined to accept work from Reithoffer on Alison South's behalf—causing Alison South to lose out on potential revenue.

63.     Upon information and belief, Mr. Thomas, who was still the CEO of Full Circle at the time, knew his wife was acting to damage Alison South and did nothing to stop her.

64.     Because of the problems they had been having with her, the new Full Circle ownership ultimately decided not to hire Mrs. Thomas and to terminate her consulting

arrangement.   At this time, Mr. Thomas became increasingly combative with Full Circle's ownership and made comments to other employees indicating his desire to get revenge against the new Full Circle ownership by "taking them down" or words to that effect.

65.     Importantly, during Defendants' employment with Full Circle and Alison South, Mr. and Mrs. Thomas both gained access to Plaintiffs' trade secrets and proprietary information, including a full list of Full Circle and Alison South clients, marketing strategy for those clients, pricing strategy with those clients, and of their terms and service preferences, among other unique items of information.

66.     Additionally, through their employment as managers of Full Circle and Alison South, Mr. and Mrs. Thomas gained direct access and influence with Plaintiffs' clients, employees, and the public at large.

**F. Mike Thomas Terminates his Employment with Plaintiffs, Steals Plaintiffs' Trade Secrets, Solicits Plaintiffs' Employees and Clients, and Creates a Marketing Company with Mrs. Thomas and Wesley Roberts to Directly Compete with Plaintiffs.**

67.     On September 21, 2023, Mike Thomas voluntarily resigned from his position as Full Circle CEO.

68.     Prior to his resignation, Mike Thomas had approached Vishal Shah, one of Xiingo's owners and the Chief Operating Officer ("COO") of Alison South, regarding a proposal in which Mike Thomas would become a consultant to Alison South to assist them with managing a select group of clients. No agreement was ever reached regarding this plan however, and Mike Thomas departed the company.  What Xiingo, Mr. Shah, and his co-owner did not realize was that the group of Alison South clients Mike Thomas proposed to "manage" was actually a "shopping list" of clients he intended to steal once he left Full Circle/Alison South.

69.     The same week that Mike Thomas resigned, both Mr. and Mrs. Thomas also contacted Taylor Buzhardt, the Vice President of Client Services for Alison South and friend of Mr. Thomas,  with the intent of influencing her  to terminate her employment with Alison South

to work with Mike and Ashley Thomas at their new marketing company.  Despite Ms. Buzhardt telling Mr. Thomas repeatedly that she did not want to leave her employment, he and his wife continued to pressure Ms. Buzhardt until she cut them off.

70.     After Mr. Thomas had disclosed he would be resigning from Full Circle but prior to his last day, Ms. Buzhardt noticed that he scheduled meeting on his Full Circle calendar for himself, Ashley Thomas, and Jeremy O'Donnell, the owner of Model Performance Group ("MPG"), one of Alison South's clients. This seemed very odd as he was leaving the company, so Ms. Buzhardt notified Human Resources and another Vice President of Client Services at Alison South.  Mr. Thomas then changed the name of the meeting, but kept the same participants.  When Ms. Buzhardt confronted Mr. Thomas, he told her that he was meeting with Mr. O'Donnell because he "consulted" for him, and they were friends.

71.     As part of Mike Thomas's departure from Full Circle and Alison South, he met with the company's Chief Financial Officer, Priya Betala, and the company's HR director, Lori Stevens, for an exit interview on his last day of work. During his time as an owner and as the CEO of Alison South, Mike Thomas had a company-owned Apple laptop computer, as well as a company-owned Apple iPhone.  Mike Thomas brought his laptop to the exit interview and told Ms. Betala and Ms. Stevens that he had already wiped the entire contents of the laptop—thus destroying valuable company information.

72.     When asked why he did this, Mike Thomas acted nonchalant about it and said that he had saved them money they would have had to spend to have a third-party wipe it.  Mike Thomas also did not bring his iPhone to the exit interview and said that he would drop it off in a few days.

73.     Ashley Thomas subsequently dropped off the iPhone, which had also been completely reset and wiped, in the mail drop box at Alison South's Aiken office together with a thumb drive, which Mike Thomas represented contained the contents of the laptop that had been

deleted.  Full Circle's ownership was skeptical that the entire contents of the laptop were on the thumb drive, and a review of the contents of that thumb drive revealed that there were only a limited set of documents on the thumb drive.

74.     In direct violation of the non-competition provisions of the PA and EA, after Mike Thomas resigned as CEO of Full Circle, he immediately accepted a position with Alison South client BJM Group, an accounting practice based in Duluth, Georgia,[5] as their Chief Marketing Officer ("CMO").

75.     This put Alison South in a difficult position because BJM Group was one of its key clients.  Neither BJM Group nor Mike Thomas asked for approval of this arrangement; however, the Full Circle ownership was also concerned that if they objected, they would lose BJM Group entirely as a client.  Mr. Thomas's employment arrangement with BJM Group also apparently permits him to perform outside work for other clients.

76.     Despite Alison South's efforts to accommodate both Mike Thomas and BJM Group, almost immediately after Mr. Thomas started at BJM Group, that company terminated its service contract with Alison South.

77.     Shortly after this, Ashley Thomas publicly announced the creation of Next Marketing Group, Inc., a full-service marketing firm based out of Aiken, South Carolina, (apparently unrelated to "Next Marketing Group, LLC" based in Atlanta, Georgia) in October 2023.  Next Marketing Group, Inc. was incorporated on November 12, 2023, per the Business Entities Online database for the South Carolina Secretary of State.  Ashley Thomas now serves as the "Owner and Accounts Director" of Next Marketing Group.

---

[5] (*See* Georgia & Florida Local Accounting Firms (bjmgroup.com).

78.     It is no coincidence that Next Marketing Group, Inc.—which is now in direct competition with Plaintiffs and operates in the same geographic area as Alison South—was created around the time Mike Thomas left Full Circle/Alison South.

79.     At some point either before Mike Thomas left Full Circle/Alison South or shortly after he left, Mr. and Mrs. Thomas devised a scheme together in which Mrs. Thomas would create this new marketing company, Next Marketing Group, to which Mr. and Mrs. Thomas would divert Alison South's clients, business opportunities, and employees.

80.     Full Circle had suspicions that this was occurring based on information they received from other employees, including employees whom Mr. and Mrs. Thomas solicited to come work for them, and from information they heard from third parties.

81.     These suspicions began to be confirmed when Alison South started receiving notices of termination from multiple clients in rapid succession, including some of Plaintiffs' Georgia-based clients BJM Group, BJ Jordan State Farm, and Bela Family Dentistry.  Prior to his departure in September 2023, Mike Thomas had directly managed many of the client accounts who gave termination notices. Several of these clients were listed as "Key Clients" in the PA.

82.     Some of the client termination notices cited dissatisfaction with the new Full Circle ownership as the reason they were terminating.  This was confusing to Full Circle's ownership because Mr. Thomas had been the person most recently handling their accounts, and Full Circle's new ownership/management had little direct interaction with them.

83.     Further, and perhaps most suspiciously, Full Circle ownership/management noticed that several of the terminating clients were clients that Mr. Thomas had proposed to continue assisting Alison South in managing on a consulting basis, an arrangement to which Plaintiffs never agreed and which would violate both the PA and the EA.  Additionally, at least some of these clients have since confirmed that have or plan to move their business to Next Marketing Group.

84.    Full Circle's suspicions about Mr. and Mrs. Thomas were further confirmed when they discovered certain text messages on a company cell phone that had been used by a former employee, Amber Watson. Ms. Watson was terminated from Alison South on September 28, 2023 due to her failure to appear at and deliver food for an event that Alison South was managing for a client. In connection with her termination, Ms. Watson turned over her company phone, and it was placed with other company phones to be re-issued to other employees.

85.    While the phone was being prepared to be re-issued, Alison South's Human Resources director notified Full Circle's executives that the phone contained text messages that indicated Ms. Watson, Mr. Thomas, and Mrs. Thomas were all working together, as part of Next Marketing Group, to target Alison South's clients and in fact had succeeded in convincing several Alison South clients to terminate their business relationships Alison South.

86.    Further, because Ms. Watson had synced her work phone with her personal iCloud device, new messages between her and the Thomases continued to appear on the work phone, further demonstrating their collusion to take Alison South clients.

87.    In addition to Mike Thomas's efforts to use Next Marketing Group as a vehicle to compete against Plaintiffs in violation of his restrictive covenant agreements, certain text messages between Ms. Watson and Mr. Thomas indicated that Mr. and Mrs. Thomas began using an Alison South contractor, Defendant Wesley Roberts, to download client files and information from Alison South's databases in order to use Plaintiffs' confidential data and information to assist Next Marketing Group in competing directly against Plaintiffs.  Mr. Roberts is believed to be a partner in or agent of Next Marketing Group.

88.    Mr. Roberts stole confidential and proprietary marketing material developed by Alison South for its clients.  Much of this data was stored in password protected databases on a shared Google drive or in a program called Basecamp. Mr. Roberts misused his access to company files and data as an Alison South contractor to obtain this information.

16

89.     Further, Plaintiffs believe that Mr. Thomas has also retained files he had on his work computer to assist him and his wife in serving clients they have siphoned from Alison South. Thus, in addition to intentionally wiping all business data from his company work cell phone and laptop in violation of his fiduciary duties to Plaintiffs and in violation of company policy, Plaintiffs believe Mike Thomas misappropriated private client data and contact information for Plaintiffs' clients, among potentially other trade secret information, and has refused to return it to Plaintiffs in violation of the PA and EA.

90.     Based on Plaintiffs' continuing investigation, Mike Thomas also approached current employees of Plaintiffs with an intent to induce them to terminate their employment with Plaintiffs and to work for Next Marketing Group, a direct employer, in the same geographic area, in violation of his post-employment restrictive covenants.

91.      Mike Thomas has also made disparaging comments and overtures to Full Circle/Alison South employees and customers/clients based in Georgia and South Carolina regarding Plaintiffs' business and leadership designed to discredit them and damage their reputations.

92.     Mike Thomas has already contacted multiple clients of Plaintiffs and their affiliates in order to offer marketing services in direct competition with those provided by Plaintiffs and its affiliates.

93.     Given all the facts above, Plaintiffs have determined that immediately following his resignation in September 2023, Mike Thomas began to illegally compete with Full Circle and Alison South, both individually and in concert with his wife, Ashley Thomas, their associate, Wesley Roberts, and their new company Next Marketing Group, in material breach of his post-employment restrictive covenants.

94.     As Plaintiffs discovered this scheme by Mike Thomas, Ashley Thomas, Wes Roberts, and Next Marketing Group to compete with Plaintiffs, Plaintiffs also determined that Mr.

Thomas, while working for Plaintiffs as CEO of Full Circle following the acquisition in January 2023, used his position and influence to engage in a nearly continuous attempt to destroy all existing value in Full Circle, Alison South, and their affiliates.

95.     While employed by Plaintiffs following the sale of the business to Xiingo, Mike Thomas made statements to Plaintiffs' clients disparaging Plaintiffs' business, leadership, and employees, and inciting Plaintiffs' clients to end their relationships with Plaintiffs to join Mr. Thomas and his affiliates in a future competing business.

96.     While employed by Plaintiffs following the acquisition, Mike Thomas made statements to numerous third parties, including prospective clients, disparaging and defaming Plaintiffs.

97.     Additionally, Mike Thomas made comments and overtures to Plaintiffs' employees denigrating Plaintiffs' business and soliciting them to work with Mike Thomas and his affiliates in future employment.

98.     Mr. Thomas therefore breached his nondisparagement, nonsolicitation, noncompetition, disclosure, and fiduciary obligations under the PA and EA long before he terminated his employment with Plaintiffs in September 2023 and began to openly compete with them.  It appears these breaches had two purposes: to lay the groundwork for Next Marketing Group to directly compete with Plaintiffs in marketing, while creating the opportunity for Mr. Thomas to claw back his equity interests in Full Circle.  Both served Defendants' personal and financial interests at great expense to Plaintiffs.

99.     In particular, Mr. Thomas's EA was ancillary to the PA, under which Plaintiffs owe certain ongoing financial obligations for the purchase of the equity interests—more specifically a promissory note.  Mike Thomas's breaches directly impact Plaintiffs' ability to satisfy those financial obligations and have damaged the equity interests which Plaintiffs purchased.

100.   It appears that Mike Thomas breaches of the PA and EA are specifically intended to threaten the viability of Full Circle/Alison South as going concerns and to prevent Plaintiffs from satisfying their financial obligations under the PA and the promissory note so that Mike Thomas can reclaim his ownership interests in Full Circle and Alison South under the terms of the PA and the promissory note.

101.   Defendants' illegal activities described herein, which they have been perpetrating against Plaintiffs since at least January 2023 and continue to perpetrate through the present, are severely damaging the value of Plaintiffs' equity interests and threatening the existence of Plaintiffs' business.

102.   As soon as Plaintiffs had obtained sufficient information regarding Defendants' illegal activities, they retained the undersigned counsel to represent them.  On October 6, 2023, the undersigned counsel sent a clear and unequivocal cease-and-desist letter to Mike Thomas. When Mike Thomas failed and/or refused to respond, Plaintiffs' counsel sent another letter on October 12, 2023, to Mr. Thomas' attorney, Charles George, after learning that Mr. Thomas had hired counsel.  Mr. George never responded to this demand letter, so Plaintiffs' counsel sent a third and final letter to Mr. George on November 20, 2023.  This also went unanswered.

103.   In all three letters, Plaintiffs' counsel explicitly told Mr. Thomas and counsel that Plaintiffs had become aware of his ongoing breaches of the restrictive covenants and theft of Plaintiffs' trade secrets, reminded him of Defendants' contractual, legal obligations, and told him to immediately cease and desist from Defendants' illegal activities, which have been causing significant harm to Plaintiffs.

104.   Rather than immediately stop their illegal activities upon receipt of these letters, Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Level Marketing have accelerated their damaging conduct and continued to engage in even greater breaches against Plaintiffs.

19

G. **The Harm to Plaintiffs from (1) the Loss of Improperly Solicited Employees and Clients, (2) the Misappropriation of their Business Opportunities, and (3) Loss of their Trade Secrets and Confidential Information.**

105.     In light of the above, Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group are currently engaging in, and plan to continue to engage in the solicitation of and sales of product to customers and prospective customers of Plaintiffs as defined in the EA and PA, and the disclosure of Plaintiffs' confidential information, including without limitation Plaintiffs' customers, prospective customers, strategies and business plans Mike Thomas obtained while employed with Plaintiffs, in direct violation of the PA and EA.

106.     Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group are using and plan to continue to use this confidential and trade secret information for their own benefit and to facilitate their violations or attempted violations of the restrictive covenants.

107.     Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group are currently engaging in, and plan to continue to engage in, direct competition with Plaintiffs in the business of providing local marketing services, both directly and indirectly, in states including South Carolina and Georgia, in direct violation of the PA and EA.

108.     Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group have disparaged Plaintiffs by making negative statements to customers, prospective customers, and third parties to the detriment of Plaintiffs, including in direct violation of the non-disparagement provisions of the PA and EA.  Many of these statements are untrue and defamatory.

109.     Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group have and will engage in acts of competition against Plaintiffs in violation of the PA and the EA.

110.     Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group will otherwise continue to engage in acts constituting breaches of the PA and EA with Plaintiffs, including solicitation of employees, customers and prospective customers, the

disclosure and conversion of trade secrets, and unfair competition in direct contravention to the PA and EA.

111.    Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's conduct not only raises an imminent threat of the future use/misappropriation of Plaintiffs' Business Information, employees, clients, and goodwill, but demonstrates that Defendants are actively using Plaintiffs' assets in a systematic effort to destroy Plaintiffs' business and will continue to do so unless enjoined by this Court.  The damages arising from these Defendants' theft and misuse Plaintiffs' Business Information and assets is not merely speculative. The harm is ongoing and will continue absent intervention by this Court.

**COUNT I: VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836), SOUTH CAROLINA TRADE SECRETS ACT (S.C. CODE § 39-8-10, *ET SEQ.*), AND/OR GEORGIA TRADE SECRETS ACT (O.C.G.A. § 10-1-171, *ET SEQ.*) (AGAINST DEFENDANTS MICHAEL THOMAS, ASHLEY THOMAS, WESLEY ROBERTS & NEXT MARKETING GROUP, LLC)**

112.    Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111 as though fully set forth herein.

113.    Plaintiffs enjoy an advantage over existing and would-be competition in their ability to create and develop client relationships and data, including the attainment of client identities, needs, preferences, and pricing tolerances, based on their extensive capital expenditures and significant man-hours spent to develop such relationships and client data.

114.    Plaintiffs' confidential, proprietary, and trade secret information relates to products and services, used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

115.    Plaintiffs' trade secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

116.    Plaintiffs have made reasonable efforts under the circumstances to preserve the confidentiality of their trade secrets. These efforts include requiring its employees to sign confidentiality agreements, adopting company policies related to confidentiality and non-disclosure which are expressly stated in the employee handbook, marking confidential and proprietary information as such, not distributing confidential and proprietary information outside the company, and protecting Plaintiffs' trade secrets internally with a password-protected data management system.

117.    As part of their employment, Defendants Mike and Ashley Thomas had access to most, if not all, of Plaintiffs' trade secrets.

118.    As part of his contract work with Plaintiffs, Defendant Wesley Roberts also had access to Plaintiffs' trade secrets.

119.    Defendants Mike Thomas, Ashley Thomas, and Wesley Roberts misused this access to steal Plaintiffs' trade secrets, which they are now utilizing in building their competing business, Defendant Next Marketing Group.

120.    Plaintiffs and not the Defendants owned those trade secrets.

121.    Defendants knew Plaintiffs owned those trade secrets.

122.    Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group used improper means to acquire Plaintiffs' trade secrets, by among other things:

    a.  Communicating with each other to determine what trade secrets would be useful to Defendants.

    b.  Stealing Plaintiffs' client lists and data without Plaintiffs' knowledge, approval, authorization, or agreement.

    c.  Using and intending to use Plaintiffs' trade secrets and confidential business information for personal economic benefit and gain or for the economic benefit and gain of Plaintiffs' competitors and to the detriment of Plaintiffs and without any

compensation to Plaintiffs, including but not limited to using the confidential and proprietary information and Trade Secrets to divert Plaintiffs' business and to compete with Plaintiffs for potential customers and business.

123.    Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group have access to Plaintiffs' confidential and proprietary information, and have used it for their benefit and Plaintiffs' detriment.

124.    Upon information and belief, Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's theft and misappropriation of Plaintiffs' trade secrets was conducted in a willful and malicious manner and for an improper purpose.

125.    Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's theft and misappropriation of Plaintiffs' Trade Secrets constitute civil and criminal violations of 18 U.S.C. § 1836.  Defendants' theft and misappropriation of Plaintiffs' Trade Secrets also constitute violations of the South Carolina Uniform Trade Secrets Act, S.C. Code § 39-8-10, *et seq*. and/or Georgia Trade Secrets Act, O.C.G.A. § 10-1-761, *et seq*.

126.    Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's theft and misappropriation of Plaintiffs' trade secrets has directly and proximately caused damages to Plaintiffs and their business. Therefore, Plaintiffs are entitled to an award of actual damages in an amount to be proven at trial.

127.    Because Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's misappropriation of Plaintiffs' trade secrets has been conducted in a willful and malicious manner, Plaintiffs are also entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C), S.C. Code § 39-8-40, and O.C.G.A. § 10-1-763(b) in an amount not exceeding two times the award of damages, as well as to attorneys' fees under 18 U.S.C. §1836(b)(3)(D), S.C. Code. § 39-8-80, and O.C.G.A. § 10-1-764.

128.     At all times, the above-described actions have caused and are continuing to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group will continue to offend unless enjoined.

129.     Plaintiffs are entitled to a temporary restraining order as well as a preliminary and permanent injunction against Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group to prevent further damage and harm to Plaintiffs.

**COUNT II: CONSPIRACY TO VIOLATE THE FEDERAL DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836), SOUTH CAROLINA TRADE SECRETS ACT (S.C. CODE § 39-8-10, *ET SEQ.*) AND/OR GEORGIA TRADE SECRETS ACT (O.C.G.A. § 10-1-171, *ET SEQ.*) (AGAINST DEFENDANTS MICHAEL THOMAS, ASHLEY THOMAS, WESLEY ROBERTS, & NEXT MARKETING GROUP, LLC)**

130.     Plaintiff incorporates and re-alleges all allegations in Paragraphs 1 through 111 and 113 through 129 as though fully set forth herein.

131.     Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group (the "Conspirators") entered into a conspiracy, outside the confines of the intracorporate conspiracy doctrine because of the criminal law violation, to accomplish a common and unlawful scheme to steal Plaintiffs' confidential and proprietary information.

132.     In particular, the Conspirators conspired to steal Plaintiffs' Trade Secrets held in Plaintiffs' secure database and internal files and to use those Trade Secrets to unfairly compete with Plaintiffs for future contracts, projects, and other business; and to use the Trade Secrets to improperly solicit Plaintiffs' customers.

133.     In furtherance of their unlawful design, the Conspirators personally stole and convinced now-former Plaintiffs' employee(s) to misuse their access to Plaintiffs' Trade Secrets, which are used in or affecting interstate commerce, in order to download, steal, and deliver these Trade Secrets to the Conspirators as alleged in Paragraphs 82 to 86 and 105 to 107 herein and in

violation of 18 U.S.C. § 1836 and S.C. Code § 39-8-10, *et seq*. and/or O.C.G.A. § 10-1-761, *et seq*.

134.    The Conspirators' violations of 18 U.S.C. § 1836 and S.C. Code § 39-8-10, *et seq*. and/or O.C.G.A. § 10-1-761, *et seq.,* have caused, and will continue to cause, Plaintiffs to suffer damages.

### COUNT III: RACKETEERING IN VIOLATION OF 18 U.S.C. § 1961 (AGAINST DEFENDANTS MICHAEL THOMAS, ASHLEY THOMAS, WESLEY ROBERTS, & NEXT MARKETING GROUP, LLC)

135.    Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111; 113 through 129; and 131 through 134 as though fully set forth herein.

136.    Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group, LLC are persons within the meaning of 18 U.S.C. § 1961(3).

137.    Beginning on at least on or about September 1, 2023 and continuing through the present (the "Scheme Period"), Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group and other enterprise members (the "Enterprise Members") were associated and in fact comprised an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The Enterprise Members acted willfully and with actual knowledge of the illegality of their actions and those of the enterprise.  The Enterprise Members are engaged in, and their activities affect, interstate and foreign commerce.

138.    The Enterprise Members' multiple acts as detailed above in Paragraphs 1 through 98, Paragraphs 100 through 117, and Paragraphs 119 to 122, including but not limited to Theft of Trade Secrets, constitute a pattern of racketeering activity, also known as predicate acts, as required by 18 U.S.C. § 1961 *et seq*.  These activities include multiple instances of Theft of Trade Secrets in violation of 18 U.S.C. § 1832 and conspiracy to commit Theft of Trade Secrets in violation of same, as described above in Paragraphs 1 through 98, Paragraphs 100 through 117, and Paragraphs 119 to 122.

139.   In violation of 18 U.S.C. § 1832, the Enterprise Members devised or intended to devise a scheme to misappropriate Plaintiffs' Trade Secrets, engaged individuals outside and within Plaintiffs' business to accomplish this scheme, and took measures to obtain Plaintiffs' Trade Secrets to the Enterprise Members' benefit as detailed above.

140.   Specifically, the Enterprise Members devised and acted upon a scheme to misappropriate Plaintiffs' Trade Secrets, including but not limited to the following predicate acts:

(a)   Recruitment of now former Plaintiffs' employees and contractors to the scheme by Defendants Mike and Ashley Thomas;

(b)   Planning of methods to obtain Plaintiffs' Trade Secrets by the Enterprise Members, including in-person meetings and electronic communications;

(c)   Active efforts by Defendant Mike and Ashley Thomas to solicit Plaintiffs' employees to retrieve Plaintiffs' Trade Secrets, and transmission of these Trade Secrets to other members of the Scheme or Enterprise;

(d)   Receipt of Misappropriated Trade Secrets from former Plaintiffs' employees, including Trade Secrets removed both physically and remotely;

(e)   Use of misappropriated Plaintiffs' Trade Secrets in efforts to obtain business for the Enterprise Members' financial gain; and

(f)   Such other particulars as may be shown at trial.

141.   Each of the predicate acts referred to in the preceding paragraph was for the purpose of executing the Enterprise Members Scheme, and the Enterprise Members engaged in such acts with the specific intent of furthering that scheme, willfully and with knowledge of its illegality.

142.   Each of the Enterprise Members performed or participated in the performance of at least two of the predicate acts.

143.   The Enterprise Members have used and are now using Plaintiff's stolen property, including Trade Secrets, for financial gain.

144.    The Enterprise Members conduct, as set forth above, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), because the Enterprise Members' racketeering activity consisted of two or more violations of 18 U.S.C. § 1832, the last of which occurred within ten years after commission of a prior act of racketeering activity.

145.    In violation of 18 U.S.C. § 1962(b), the Enterprise Members acquired or maintained an interest in or control of an enterprise which is engaged in or affects interstate or foreign commerce, through a pattern of racketeering activity by virtue of the illegal acts set forth above. Indeed, Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group are working together to provide marketing services to citizens of more than one state.

146.    Further, the Enterprise Members' actions violated 18 U.S.C. § 1962(c), in that the Enterprise Members, as "person[s]" employed by or associated with an enterprise engaged in or affecting interstate or foreign commerce, conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity as set forth above.

147.    The conduct and actions set forth herein were related to each other by virtue of: (a) common participants; (b) a common victim; and (c) the common purpose and common result of a concerted attack on Plaintiffs' business to misappropriate Trade Secrets for the Enterprise Members' financial benefit and to harm Plaintiffs.

148.    The Enterprise Members' activities were interrelated, not isolated, and involved a calculated series of repeated violations of the law in order to conceal and promote the Theft of Trade Secrets.  The Enterprise Members' Enterprise has existed with the current members and potentially others as yet unknown since at least on or about September 1, 2023, and the conduct and activities have continued as of the date of this Complaint.

149.    Plaintiffs have been injured as a direct result of Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's violation of 18 U.S.C. § 1961, *et seq.*, and have suffered actual damages, prior to trebling of damages, in an amount to be proven at trial.

150.    Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to threefold the amount of any actual monetary damages they have incurred as a result of Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's pattern of racketeering activity.

151.    Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover attorneys' fees and costs from Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group in an amount to be proven at trial.

**COUNT IV: CONSPIRACY IN VIOLATION OF 18 U.S.C. § 1962(D) (AGAINST DEFENDANTS MICHAEL THOMAS, ASHLEY THOMAS, WESLEY ROBERTS, & NEXT MARKETING GROUP, LLC)**

152.    Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111; 113 through 129; 131 through 134; and 136 through 151 as though fully set forth herein.

153.    During the Scheme Period, each of the Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group willfully, knowingly, and unlawfully, conspired to, and did further the efforts of the Enterprise to perpetrate the Scheme against Plaintiffs through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(b) and (c).

154.    In furtherance of the conspiracy and to effectuate its objectives, each of the Enterprise Members agreed that the following predicate acts, among others would be committed by one or more members of the conspiracy:

a.    Recruitment of now former Plaintiffs' employees and contractors to the scheme by Defendants Mike and Ashley Thomas;

b.    Planning of methods to obtain Plaintiffs' Trade Secrets by Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group, including in-person meetings and electronic communications;

c.    Conspiring with and directing former Plaintiffs' employees to remove Plaintiffs' Trade Secrets between September and November 2023, and transmission of

these Trade Secrets to Defendants Mike and Ashley Thomas and other members of the Scheme or Enterprise;

   d.  Receipt of Misappropriated Trade Secrets from Mike Thomas on multiple occasions, including Trade Secrets removed both physically and remotely;

   e.  Use of misappropriated Plaintiffs Trade Secrets in efforts to obtain business for the Enterprise Members' financial gain; and

   f.  Such other particulars as may be shown at trial.

  155. It was specifically intended and foreseen by the Enterprise Members that the Enterprise would engage in, and conduct activities which affected interstate and/or foreign commerce.

  156. Each of the Enterprise Members was aware of the various racketeering schemes, assented to the efforts of the Enterprise to carry out these acts, and acted in furtherance of the conspiracy.

  157. The pattern of racketeering consisted of multiple acts of racketeering by each of the Enterprise Members as set forth above.

  158. Plaintiffs have been injured in their business and property as a direct and proximate cause of the Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's conspiracy to violate 18 U.S.C. §§ 1962(b) & (c), and the overt acts taken in furtherance of that conspiracy.

  159. Plaintiffs have been injured in their business and property as a direct and proximate cause of the Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts constituting the pattern of racketeering activity set forth above.

  160. As a result of the violations of 18 U.S.C. § 1962(d), Plaintiffs have suffered substantial damages in an amount to be proven at trial.  Plaintiffs are entitled to recover from the

Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group the amount in which they have been damaged, to be trebled in accordance with 18 U.S.C. § 1964(c), together with interest, costs, and attorneys' fees incurred by reason of these Defendants' violations of 18 U.S.C. § 1962(d).

### COUNT V: BREACH OF CONTRACT – EMPLOYMENT AGREEMENT (AGAINST DEFENDANT MIKE THOMAS)

161.    Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111; 113 through 129; 131 through 134; 136 through 151; and 153 through 160 as though fully set forth herein.

162.    The Employment Agreement executed on January 1, 2023, contractually required Mike Thomas to (a) serve as the CEO for Full Circle for a period of three (3) years, (b) not accept or enter into contemporaneous consulting/employment relationships with third parties, (c) keep Plaintiffs' trade secrets information confidential, and (d) not to compete against Plaintiffs or to solicit Plaintiffs' employees for a period of three (3) years following termination from employment with Full Circle.

163.    Mike Thomas breached the Employment Agreement by misappropriating Plaintiffs' business and trade secret information and disclosing it to other Defendants and/or third parties, soliciting Plaintiffs' employees and clients, resigning as Full Circle CEO less than three years after January 1, 2023, and engaging in direct competition with Plaintiffs through the present.

164.    Mike Thomas's breach of the Employment Agreement has caused and will continue to cause Plaintiffs to suffer damages.

### COUNT VI: BREACH OF CONTRACT – EQUITY PURCHASE AGREEMENT (AGAINST DEFENDANT MIKE THOMAS)

165.    Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111; 113 through 129; 131 through 134; 136 through 151; 153 through 160; and 162 through 164 as though fully set forth herein.

166.     The Equity (Membership Interest) Purchase Agreement executed on January 1, 2023, contractually required Mike Thomas to: (a) maintain the confidentiality of Plaintiffs "Business Information," (b) not to use, transfer, or disclose Plaintiffs' "Business Information," (c) not to compete against Plaintiffs, (d) not to solicit Plaintiffs' employees, (e) not to disparage or defame Plaintiffs, and (f) serve as the CEO for Full Circle for a period of three (3) years.

167.     Mike Thomas breached the Equity Purchase Agreement by misappropriating Plaintiffs' business and trade secrets information and disclosing it to other Defendants and/or third parties, soliciting Plaintiffs' employees and clients, disparaging Plaintiffs' business, resigning as Full Circle CEO less than three years after January 1, 2023, and engaging in direct competition with Plaintiffs through the present.

168.     Mike Thomas's breach of the Equity Purchase Agreement has caused and will continue to cause Plaintiffs to suffer damages.

### COUNT VII: BREACH OF CONTRACT - PURCHASE EQUITY AGREEMENT (AGAINST DEFENDANT MIKE THOMAS AND KATHLEEN SANDERS)

169.     Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111; 113 through 129; 131 through 134; 136 through 151; 153 through 160; 162 through 164; and 166 through 168 as though fully set forth herein.

170.     The Equity (Membership Interest) Purchase Agreement executed on January 1, 2023, contractually required Defendant Mike Thomas and Kathleen Sanders to make complete, accurate representations and warranties regarding the financial position of Full Circle and Alison South in furtherance of the sale to Plaintiff Xiing.com.

171.     Among other things, Defendants Mike Thomas and Kathleen Sanders made a number of representations and warranties in furtherance of the sale, including that they fully disclosed the "material financial position of [Full Circle] and the material results of operations," any and all "liabilities incurred" by Full Circle, and all customers that intended to alter their

31

business relationship with Full Circle, as of the execution of the Equity Purchase Agreement on January 1, 2023.

172.    Defendants Mike Thomas and Kathleen Sanders had a duty to disclose this material information in connection with Plaintiffs' purchase of their ownership interest.

173.    Defendants Mike Thomas and Kathleen Sanders failed to disclose numerous liabilities, including employee PTO and intercompany liabilities, in the "Current Financial Statements" presented to Plaintiffs, and failed to disclose that key customers were terminating or substantially reduced their business with Full Circle, as part of the equity purchase—thus providing an inflated value of the company's true worth.

174.    At the time Defendants Mike Thomas and Kathleen Sanders concealed and failed to disclose this information, they knew that this information was material to negotiating the terms of the Equity Purchase Agreement, and that Plaintiff Xiingo.com may not have agreed to the purchase or purchase price if they knew the true financial position of Full Circle and Alison South.

175.    Had Plaintiff Xiingo.com been aware of the true financial position of Full Circle and Alison South, it may not have entered the Equity Purchase Agreement or paid the same value for Mike Thomas and Kathleen Sanders' ownership interest in Full Circle and Alison South.

176.    Defendants Mike Thomas and Kathleen Sanders breached the Equity Purchase Agreement by failing to make complete, accurate representations and warranties regarding the financial position of Full Circle and Alison South in furtherance of the sale to Xiingo.com.

177.    Further, Defendants Mike Thomas and Kathleen Sanders have failed to provide books and records to the new ownership of Full Circle to allow them to accurately file tax returns and maintain the company's financial reporting, and have instead withheld them without justification.

178.    Mike Thomas and Kathleen Sanders' failure to disclose the information has directly impacted Plaintiffs' ability to satisfy their financial obligations under the Equity Purchase

Agreement, damaged the equity interests which Plaintiffs purchased, and has caused and will continue to cause Plaintiffs to suffer damages.

179.    Further, their failure to provide company books and records have impaired Full Circle's ability to operate.

180.    Defendant Mike Thomas and Kathleen Sanders' breach of the Equity Purchase Agreement has caused and will continue to cause Plaintiffs to suffer damages.

## COUNT VIII:  TORTIOUS INTERFERENCE WITH BUSINESS OR CONTRACTUAL RELATIONS (AGAINST DEFENDANTS MIKE THOMAS, ASHLEY THOMAS, WESLEY ROBERTS, & NEXT MARKETING GROUP, LLC)

181.    Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111; 113 through 129; 131 through 134; 136 through 151; 153 through 160; 162 through 164; 166 through 168; and 170 through 180 as though fully set forth herein.

182.    Plaintiffs maintain contracts and advantageous business relations with their clients.

183.    During and after their employment and/or contracting work with Plaintiffs, Mike Thomas, Ashley Thomas, and Wesley Roberts had actual knowledge of the contracts and/or advantageous business relationships that Plaintiffs maintained with its current and prospective clients.  Defendant Next Marketing Group obtained this knowledge vicariously through Mike Thomas, Ashley Thomas, and Wesley Roberts.

184.    Defendants Mike Thomas, Ashley Thomas, Wes Roberts, and Next Marketing Group, have intentionally and wrongfully interfered with contracts and/or advantageous business relationships that Plaintiffs maintained with their current and prospective clients.

185.    Defendants Mike Thomas, Ashley Thomas, Wes Roberts, and Next Marketing Group's interference with Plaintiffs' rights under the contracts and/or advantageous business relationships that Plaintiffs maintained with their clients was intentional, malicious, carried out through dishonest, fraudulent, unfair, and/or improper means, and specifically designed to injure Plaintiffs' business.

186.    Following the events described above, several clients of Plaintiffs terminated their business relationships with Plaintiffs and indicated they were leaving for different marketing companies, including Defendant Next Marketing Group.  Plaintiffs believe this departure of clients occurred because of Defendants' disparagement of Plaintiffs and inducement of their clients to leave Plaintiffs' company to join Defendants Mike Thomas, Ashley Thomas, and Wes Roberts's competing business.

187.    Defendants' Mike Thomas, Ashley Thomas, and Wes Roberts active inducement of Plaintiffs' clients to reduce or discontinue their business relationships with Plaintiffs has caused and will continue to cause Plaintiffs to suffer damages.

## COUNT IX: COMMERCIAL DISPARAGEMENT (AGAINST DEFENDANTS MIKE THOMAS, ASHLEY THOMAS, WESLEY ROBERTS, & NEXT LEVEL MARKETING GROUP, LLC)

188.    Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111; 113 through 129; 131 through 134; 136 through 151; 153 through 160; 162 through 164; 166 through 168; 170 through 180; and 182 through 187 as though fully set forth herein.

189.    As set forth above, Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group have made false, misleading, defamatory, and disparaging statements about Plaintiffs, their business, and their ability to service its customers.

190.    The false, misleading, defamatory, and disparaging statements made by Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group about Plaintiffs, their business, and their ability to service its customers were made without justification.

191.    These statements have caused and will cause harm to Plaintiffs' reputation, relationship with their employees, and their goodwill with their customers.

192.    Defendants Mike Thomas, Ashley Thomas, Wesley Roberts, and Next Marketing Group's disparaging statements have caused, and will continue to cause Plaintiffs to suffer damages.

## COUNT X: BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
## (AGAINST DEFENDANT MIKE THOMAS)

193.    Plaintiffs incorporate and re-allege all allegations in Paragraphs 1 through 111; 113 through 129; 131 through 134; 136 through 151; 153 through 160; 162 through 164; 166 through 168; 170 through 180; 182 through 187; and 189 through 192 as though fully set forth herein.

194.    As detailed herein, Defendant Mike Thomas owed Plaintiffs a duty of loyalty and as a fiduciary.

195.    Mike Thomas owed paramount fiduciary duties to Full Circle and Alison South by virtue of his position as CEO, and under his Employment Agreement.  These duties include a duty to exercise good business judgment, to act prudently in the operation of Plaintiffs' businesses, to act in the best interests of Plaintiffs, to place the interests of Plaintiffs before his own, and not to appropriate business opportunities of Plaintiffs which existed while he was an employee and CEO of Plaintiffs.

196.    Instead of working to improve Plaintiffs' business, Defendant Mike Thomas used his position with Plaintiffs to usurp and subvert Plaintiffs' opportunity and relationship with employees and clients for Defendants' benefit.

197.    Upon information and belief, Defendant Mike Thomas breached his fiduciary duties and misappropriated Plaintiffs' corporate opportunities behind Plaintiffs' back by: (a) actively competing with Plaintiffs while still employed by Plaintiffs, (b) disparaging Plaintiffs' business and leadership while still employed by Plaintiffs, (c) soliciting Plaintiffs' employees to terminate their employment and join him in a competing business, (d) soliciting Plaintiffs' customers and clients while he was still an employee and CEO of Full Circle, (e) misappropriating Plaintiffs' business and trade secret information and disclosing it to other Defendants and/or third parties, (f) intentionally destroying Full Circle and Alison South information from his company

work telephone and laptop, and (g) undermining Plaintiffs' profitability to claw back his equity interests in Full Circle and Alison South under the terms of the PA.

198.     Defendant Mike Thomas's breach of his duties of loyalty and as a fiduciary to Plaintiffs has caused and will continue to cause Plaintiffs to suffer damages.

199.     As a result of Defendant Mike Thomas's knowing, intentional, and willful breach of his duties of loyalty and as a fiduciary to Plaintiffs, Plaintiffs are entitled to recover actual and exemplary damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

a.     That the Court issue preliminary and permanent injunctive relief against Defendants, and that Defendants, individually and through their officers, agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with Defendants be enjoined and restrained from:

   i.     Soliciting Plaintiffs' clients and customers;

  ii.     Soliciting Plaintiffs' employees;

 iii.     Actively competing with Plaintiffs in violation of the Equity Purchase and Employment Agreements;

 iv.     Disparaging and defaming Plaintiffs' business and leadership;

  v.     Using or disclosing any of Plaintiffs' confidential business information;

 vi.     Interfering with Plaintiffs' contractual relationships with clients and customers;

vii.     Misappropriating and using Plaintiffs' Trade Secrets; and

viii.     Assisting, aiding, or abetting any other person or business entity in misappropriating Plaintiffs' Trade Secrets.

b.      That the Defendants be enjoined from using any Plaintiffs' information acquired through or derived from the acts described herein, and that Defendants account for all information it acquired from or derived from said acts, including the identity of all employees with access to such information, and the locations where such information is stored in hard copy or electronic storage, including all summaries or works based in whole or in part on Plaintiffs' information acquired by the acts set forth in this Complaint;

c.      For an order prohibiting the use or disclosure of any Plaintiffs' confidential information that Defendants have already obtained in breach of the Equity Purchase and Employment Agreements and requiring the return and/or destruction of all things created from or based upon that information;

d.      That the Court enjoin any further violation of the Equity Purchase and Employment Agreement by Defendant Mike Thomas, both directly and indirectly through any actions taken by the other Defendants or other associates or affiliates of Defendant Mike Thomas;

e.      That the Court award Plaintiffs all damages caused by Defendants' unlawful actions and fraud;

f.      That the Court award Plaintiffs treble damages and reasonable attorney's fees in accordance with 18 U.S.C. 1964(c);

g.      That the Court award exemplary damages as provided by law;

h.      That the Court award Plaintiffs their attorneys' fees and all other costs associated with this action pursuant to O.C.G.A. § 13-6-11 and/or the terms of the Equity Purchase and Employment Agreements; and

i.      That the Court award Plaintiffs all other relief to which they are entitled and such other further relief as is just and proper.

**<u>J</u><u>URY</u> <u>D</u><u>EMAND</u>**

Plaintiffs hereby demand trial by jury of twelve (12) in the above-captioned matter on all issues so triable.

Respectfully submitted, this <u>4</u><u>th</u> day of December, 2023.

<u>/s/ Samuel J. Adams</u>_____
JOHN E. PRICE
Georgia Bar No. 142012
SAMUEL J. ADAMS
Georgia Bar No. 397520
DAVID HYMEL
Georgia Bar No. 798669
FULCHER HAGLER LLP
Post Office Box 1477
Augusta, GA  30903-1477
(706) 724-0171
jprice@fulcherlaw.com
sadams@fulcherlaw.com
dhymel@fulcherlaw.com

## <u>VERIFICATION</u>

Vishal Shah, the Chief Executive Officer at Xiingo.com, LLC, Full Circle Holdings, LLC, and Alison South Marketing Group, LLC, states under penalty of perjury that he has the authority to make this Verification, that he has read the contents of the Verified Complaint, and that the allegations of the Verified Complaint are true to his own personal knowledge, or where based upon information and belief, he believes them to be true.

Executed this <u>4</u><sup>th</sup> day of December, 2023.

_____
VISHAL SHAH
Chief Executive Officer