# EXHIBIT B

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is executed effective as of January 1, 2023 ("Effective Date") between **FULL CIRCLE HOLDINGS, LLC** (the "Company") and **MICHAEL THOMAS** ("Employee").

## RECITALS:

A.  Company operates an Aiken, South Carolina based business with principal offices at 132 Chesterfield St. S, Aiken, SC 29801.

B.  Company desires to engage the services of Employee on an exclusive basis as an executive for the Company.

## TERMS OF AGREEMENT:

NOW, THEREFORE, FOR VALUE RECEIVED, and in consideration of the mutual covenants contained herein, Company and Employee agree as follows:

1.  **Engagement/Term**.  Company shall employ Employee as Chief Executive Officer for a period of thirty six (36) months from the Effective Date, subject to the termination for cause provisions herein (the "Term") and Employee hereby agrees to be engaged by Company for the Term in such capacity.  This Agreement shall automatically expire at the end of the indicated term unless extended in writing by Company. Continued employment subsequent to the Term shall be deemed to be on an at-will basis without confirmation by either party.   Bonuses shall not be deemed to be accrued and part of any severance package unless and until the Board of Directors has declared and awarded the particular bonus to the particular Employee.

2.  **Exclusive Employment/Other Engagements.**   Company and Employee hereby stipulate that this Agreement is exclusive as to Employee, and Employee shall not accept or enter into contemporaneous consulting/employment relationships with third parties. Employee shall dedicate a minimum of forty (40) hours per week to the tasks associated with the executive position assumed under this Agreement.  Notwithstanding the above, these terms shall not prohibit Employee's ownership or involvement in Augusta Podcast, LLC, TableTop Ventures, LLC or Three Sixty Promo, LLC or any other unrelated business as long as Employee dedicates a minimum of forty (40) hours per week to the Company's business.

3.  **Compensation.**   Employee shall be compensated for his services as follows:

(a)  Base Salary.  As compensation to Employee for the performance of his duties or obligations under this Agreement, Company shall pay Employee a base salary (the "Base Salary") of ONE HUNDRED FORTY THOUSAND AND NO/100 DOLLARS ($140,000) annually, subject to payroll taxes and other payroll deductions, during the term of this Agreement.

1

(b) <u>Bonus</u>. In addition to receiving the Base Salary described in Section 3.a., Employee may be awarded such bonuses from time to time as are established by the Board of Directors of the Company.

(c). <u>Company Related Travel</u>. Employee shall be reimbursed, upon submission of receipts and proper documentation, for any and all Company related travel away from the principal office, including coach airfare, hotel and meals (subject to the expenditure limitations imposed by Company).

(d) <u>Documented Out-of-Pocket Expenses</u>. Employee shall be promptly reimbursed for all other reasonable out-of-pocket expenses incurred on behalf of Company which are properly documented to Company; including, long distance telephone charges on telephones other than Company's office phones.

(e) <u>Medical/Dental Insurance and 401K Plans</u>. Employee shall be entitled during the Term, upon satisfaction of all eligibility requirements, to participate in all health, dental, disability, life insurance, 401K, retirement and other benefit programs now or hereafter established by Company and shall receive such other benefits as may be approved from time to time by the Board of Directors.

(f) <u>Incidental Expenditures</u>. Employee shall be entitled to reimbursement for incidental expenditures in an amount up to $10,000 per year. These expenditures include (i) gas expenditures up to $500/month; (ii) car Wifi up to $25/month; (iii) cell phone bill; and (iv) dry cleaning up to $250/month (currently negotiated as a trade where we host and edit their website in exchange for dry cleaning services).

4. **Death of Employee.** Upon the death of Employee, this Agreement will automatically terminate.

5. **Duties and Obligations.** Employee shall perform such duties and tasks pertaining to Employee's expertise as Company's Board of Directors shall from time to time reasonably determine and specify, as well as those duties and tasks customarily attributable to the title assumed as described in paragraph 1 above, if any, including, but not limited to the following duties and tasks:

1) Business Development:
    a. Manage and oversee business development for the overall group.
    b. Work with monthly, quarterly and yearly revenue targets to achieve them.
    c. Create plans and execute them for getting national product clients.
    d. Work with Vishal Shah (President and acting COO) to implement overall business growth plan: Exact details and execution plan to follow.
2) Locations Management:
    a. Manage existing location sales and work with the location heads to execute growth plans.
    b. Expand into new locations, either by acquisition or by organic growth strategies.
    c. Create profitability plans and execute them for each location.
3) Client Accounts Management:

2

    a. Work with Lindsey McCullough (proposed accounts director) to ensure smooth client onboarding and post-sales management.
    b. Create a plan for client "upsell" to create more revenue from existing client cross-sell and work with the client accounts management team to implement these sales plans.
    c. Due to Employee's existing influence and the relationship he has built with the clients listed in (i) – (v) below, his duties will require him to continue to support the Account Manager and be involved in supporting the following clients: (i) Hixon's Roofing; (ii) Victory Baptist Church; (iii) Burke Health; (iv) Bela Dentistry; and (v) Queensboro Bank. Employee should not be, and currently is not, the Account Manager on these clients, but he works in an advisory role for overall client strategy and media budgets/buying for these specific clients.

4) Overall:
    a. Organize and conduct weekly sales meetings by teams and locations.
    b. Create weekly sales targets and weekly sales performance metrics by teams and locations.
    c. Continue current sales mentoring for team members, maybe create a quarterly sales workshop to motivate and retrain the sales team.
    d. The parties acknowledge that Employee will take active leadership in determining pricing, setting revenue and profitability goals, mentoring sales team members, and developing strategies for organizational growth and Employee shall work with cooperatively with the President to execute and implement these plans and goals. However, Employee's failure to meet or achieve these goals shall not be deemed a material breach of this Agreement by Employee under Section 7.(c)(vii) for which Employee may be terminated by the Company "for cause" so long as Employee uses reasonable efforts to perform his responsibilities.

Employee shall perform the designated tasks at the home office or at such location or locations assigned by Company's Board of Directors from time to time, which may include locations other than the Company's home office. Employee hereby covenants and agrees to perform the services for which he is hereby retained in good faith and with reasonable diligence in light of attendant circumstances.

The Employee shall, at all times, be under the supervision of the Company's Board of Directors and shall comply with such persons' directives as to all reasonable duties and tasks to be performed.

    6. **Confidentiality, Non-Competition and Non-Solicitation Covenants of Employee**.

    (a)    Trade Secret Policy. Employee acknowledges that the business involves valuable, confidential and/or proprietary recipes, formulae, trade secrets and data and information of various kinds which secrets, data and information, including without limitation, brewing recipes and formulae, customer lists, sales data and market forecasts, proprietary merchandising techniques, management techniques and marketing strategies relating to operations, and other information not generally known, concerning the business or its operations, products, or personnel (collectively

3

the "Business Trade Secrets"). Employee covenants and agrees that during his employment and at all times subsequent to the period of employment that he will keep confidential all of the Business Trade Secrets.

(b) <u>Non-Competition with Company and Affiliates.</u> Because of and in the consideration of:

(i) the extensive knowledge of the Business Trade Secrets (including confidential information) provided to, generated by, or acquired by Employee during employment;

(ii) the highly competitive nature of the business; and

(iii) all financial benefits provided to Employee by Company or its affiliates:

Employee agrees that at all times during his employment and for a period of thirty six (36) months following the termination of his employment for cause, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any third party, compete with or assist any third party to compete with Company or its affiliates in the geographic area which includes Aiken, South Carolina or Augusta, Georgia and an area within ten (10) miles of such locations. This covenant shall include ownership or operation of, consulting to, or employment with the competitive venture, but shall not include ownership of the stock of any publicly traded enterprise engaged in the business.

(c) <u>Non-Solicitation of Company's Employees</u>. For the same period, Employee further agrees that Employee will not solicit for employment or otherwise cause or induce any other employee of Company or any of its Affiliates to voluntarily terminate his or her employment with Company or its Affiliate for the purpose of seeking employment with Employee or any business enterprise in which Employee is engaged or affiliated.

(d) <u>Remedies for Breach or Threatened Breach</u>. In the event that Employee violates or threatens to violate any of these covenants of confidentiality, non-competition and non-solicitation, Company's remedies at law may not be adequate. Accordingly, Company shall have the right to obtain, without posting a bond or security, a court order, including an injunction, to stop any such violation or attempted or threatened violation. In addition to such equitable remedies, Company shall have the right to seek any other legal remedy available, including money damages.

7. **Termination By Company or Employee.**

(a) Employee's employment may be terminated at any time by mutual agreement. Upon such termination, Employee shall be entitled to salary and benefits which have accrued as of the date of termination.

(b) Termination of employment by either party prior to the expiration of the Term, other than as set forth in paragraph 4 above or other than "for good cause" as defined hereinbelow, shall constitute a breach of this Agreement by the terminating party. In the event that the terminating event is the early resignation by Employee, then Employee shall only be entitled to his Base Salary and benefits which have accrued as of the date of such resignation. In the event of

4

early resignation, the non-competition and non-solicitation covenants binding Employee set forth in paragraph 6 above shall be deemed to continue until the expiration of twelve (12) months following the date upon which the Term would have otherwise expired absent the early resignation. In the event that the terminating event is a unilateral termination by Company prior to the expiration of the employment Term other than an event described in paragraph 4 above and other than "for cause", Company shall be obligated to pay to Employee all Base Salary and benefits to which Employee would have been entitled under this Agreement had Employee continued his employment through the expiration date of the Term, plus two (2) months Base Salary.  In the event of early termination by Company other than "for cause", the non-competition and non-solicitation covenants binding Employee set forth in paragraph 6 above shall be deemed to continue until the twelve (12) month anniversary of the date of termination.

(c) This Agreement may be terminated 'for cause" by Company immediately, without prior notice (except as indicated hereinbelow). Upon any such termination "for cause", Employee shall only be entitled to his Base Salary and benefits which have accrued as of the date of such termination.  In the event of termination "for cause", the non-competition and non-solicitation covenants binding Employee set forth in paragraph 6 above shall be deemed to continue until the expiration of twelve (12) months following the date upon which the Term would have otherwise expired absent the early termination "for cause". For purposes hereof, "for cause" shall mean any of the following events:

(i) Any embezzlement or wrongful diversion of funds of Company or any affiliate of Company by Employee;

(ii) Repeated malfeasance as to core or material delegated job assignments in the reasonable opinion of the Company's President or insubordination by Employee in the conduct of his duties that remains uncured for a period of thirty (30) days following written notice from Company to Employee of such violation;

(iii) Failure to observe or strictly adhere to all Company policies put into effect and/or amended from time to time that remains uncured for a period of thirty (30) days following written notice from Company to Employee of such violation;

(iv) Abandonment by Employee of his job duties or repeated absences from Company-directed tasks which are not otherwise excused by the Company that remains uncured for a period of thirty (30) days following written notice from Company to Employee of such violation;

(v) Competing with the Company or otherwise diverting away from the Company trade secrets or business opportunities intended for the Company or which could reasonably benefit the Company's core business.

(vi) Conviction of Employee or the entry of a plea of nolo contendere or equivalent plea of a felony in a court of competent jurisdiction, or any other crime or offense involving moral turpitude or

(vii) Other material breach of this Agreement by Employee that remains uncured for a

5

period of thirty (30) days following written notice from Company to Employee of such alleged breach, which written notice describes in reasonable detail the nature of such alleged breach.

8.  **Time of Essence, Attorneys Fees.**  Time is of the essence with respect to this Agreement and same shall be capable of specific performance without prejudice to any other rights or remedies under law.  If either party seeks to enforce, in law or in equity (including any arbitration proceeding), any provision contained herein, then the prevailing party in such proceeding shall be entitled to attorneys' fees, interest and all such other disbursements and relief provided under law, but shall not be entitled to punitive or exemplary damages of any kind.

9.  **Modification or Amendment.**  The parties hereto may modify or amend this Agreement only by written agreement executed and delivered by the respective parties.

10. **Binding on Heirs and Assigns.**  This Agreement shall inure to and be binding upon the undersigned and their respective heirs, representatives, successors and permitted assigns.  This Agreement may not be assigned by either party without the prior written consent of the other party.

11. **Counterparts.**  For the convenience of the parties hereto, this Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

12. **No Waivers.**  No waiver of or failure to act upon any of the provisions of this Agreement or any right or remedy arising under this Agreement shall be deemed or shall constitute a waiver of any other provisions, rights or remedies (whether similar or dissimilar).

13. **GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH CAROLINA AND SHALL BE PERFORMABLE IN AIKEN COUNTY, SOUTH CAROLINA.**

14. **Notices.**  Any notice, request, instruction or other document to be given hereunder by any party to the other shall be in writing (by FAX, mail, telegram or courier) and delivered to the parties as follows:

>           If to Company:          Attn: Vishal Shah, CEO
>                                   2035 N Mason Drive Unit 504,
>                                   Katy, Texas 77449-6879
>                                   Email: vshah@xiingo.com
>
>           If to Employee:         Michael Thomas
>                                   132 Chesterfield St. S
>                                   Aiken, SC 29801

15. **Entire Contract/No Third Party Beneficiaries.**  This Agreement constitutes the entire agreement, and supersedes all other prior agreements and understandings, both written and

oral, between the parties with respect to the subject matter hereof, and is not intended to create any obligations to, or rights in respect of, any persons other than the parties hereto. There are no third party beneficiaries of this Agreement.

16. **Captions for Convenience.** All captions herein are for convenience or reference only and do not constitute part of this Agreement and shall not be deemed to limit or otherwise affect any of the provisions hereof.

17. **Severability.** In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or enforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or enforceable provision had never been contained herein.

18. **BINDING ARBITRATION.** ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, SHALL BE SETTLED BY FINAL AND BINDING ARBITRATION CONDUCTED IN AIKEN COUNTY, SC, IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES ("RULES") OF THE AMERICAN ARBITRATION ASSOCIATION IN EFFECT AT THE TIME THE CONTROVERSY OR CLAIM ARISES, BUT SAID ARBITRATION NEED NOT BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION. THE ARBITRATOR, WHICH SHALL BE AGREED UPON BY THE PARTIES, SHALL HAVE JURISDICTION TO DETERMINE ANY SUCH CLAIM AND MAY GRANT ANY RELIEF AUTHORIZED BY LAW FOR SUCH CLAIM EXCLUDING CONSEQUENTIAL AND PUNITIVE DAMAGES. EACH PARTY TO THE ARBITRATION SHALL BEAR THE INITIAL FILING FEES AND CHARGES EQUALLY, PROVIDED, HOWEVER, THAT THE ARBITRATOR SHALL AWARD REIMBURSEMENT OF ALL SUCH COSTS AND FEES TO THE PREVAILING PARTY AS A PART OF ITS AWARD. THIS PARAGRAPH SHALL LIKEWISE BE SPECIFICALLY ENFORCEABLE IN A COURT OF COMPETENT JURISDICTION SHOULD THE PARTY NOT DEMANDING ARBITRATION REFUSE TO PARTICIPATE IN OR COOPERATE WITH THE ARBITRATION PROCESS.

EXECUTED by the undersigned as of the Effective Date set forth above.

"Company"

*/s/ Vishal Shah/*

By: Vishal Shah, CEO

"Employee"

_____

Michael Thomas

4884-7388-6782, v. 11

7